HENRY B. SHIELDS v. WILLIAM O. GAMBLE.

FILED DECEMBER 4, 1894. No. 5668.

1. **Recovery for Commission Due Real Estate Agent:**
   SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* to
   sustain the verdict.

2. **Costs:** JUDGMENT IN DISTRICT COURT: AMOUNT. In an action
   brought in the district court the plaintiff obtained judgment for
   $200. *Held*, That he was not entitled to recover costs, but that
   each party is required to pay his own costs.

3. ——: REVIEW: MOTION TO RETAX. In order to review the
   question of the taxation of costs a motion to retax must be filed
   in the trial court and a ruling obtained thereon.

ERROR from the district court of Wayne county. Tried
below before ALLEN, J.

*H. H. Moses* and *Barnes & Tyler*, for plaintiff in error.

*A. A. Welch* and *Frank M. Northrop, contra.*

NORVAL, C. J.

This suit was brought in the district court by William
O. Gamble to recover the sum of $365 for commissions

alleged to be due him for services rendered Henry B. Shields in procuring a purchaser, or effecting the exchange, of certain real estate owned by the latter. The defendant answered the petition by a general denial. Upon the issues joined the cause was tried to a jury, with a verdict for the plaintiff in the sum of $200. A motion for a new trial was filed by the defendant, which was overruled, and the court ordered that the costs be taxed one-half to each party, and a judgment was entered upon the verdict. The defendant prosecutes error to this court.

The first ground urged in the brief for a reversal of the judgment is that the court erred in allowing the plaintiff below to testify, over the objections of the defendant, that the usual and customary commission charged by real estate agents for finding a purchaser for real estate was five per cent upon the first $1,000, and two and a half per cent thereafter. This objection is not well taken for two reasons: First—No complaint as to the admission of the testimony is made in the petition in error. This was necessary in order to have the ruling of the court thereon reviewed. In the next place the plaintiff sought to recover upon a *quantum meruit*, and he was permitted to testify, without objection, that $365 was a reasonable compensation for his services in finding a purchaser or bringing about an exchange of the property. The defendant offered no testimony upon that branch of the case. Besides the witness J. S. French, without any objection being made at the time, gave precisely the same testimony as did the plaintiff as to the customary and ordinary percentage charged by real estate dealers in making sales and effecting the exchange of real property. The defendant, therefore, was not prejudiced by the admission of the testimony of which complaint is here made. Upon the cross-examination of the plaintiff below he was asked this question: "Well, you don't know, then, that he had been entering into negotiations with other real estate agents to find him a place for his Sioux City

*property in exchange, do you?"* The question was objected to by plaintiff's counsel as incompetent, irrelevant, immaterial, and not proper cross-examination, which objection was sustained. This ruling it is insisted is erroneous. Although the point is sufficiently raised in the motion for a new trial under the assignment of "Errors of law occurring at the trial," yet the court cannot review the decision, inasmuch as the same is not covered by any of the assignments in the petition in error; and for the same reason we will not notice the sustaining of objections by the court to questions propounded to the witness Clark on cross-examination, found on pages 17 and 20 of the bill of exceptions.

It is argued in the brief of counsel that the court erred in excluding the answer to interrogatories 12 and 13 of the deposition of the plaintiff in error, in excluding the answers made by the witness A. M. Jackson in his deposition to direct interrogatories 42, 51, 54, 56, 59, 60, 61, 62, 63, and 64, in granting plaintiff leave to withdraw cross-interrogatory 3 and the answer thereto of said deposition, also in allowing plaintiff to withdraw from the deposition of said Jackson, and from the consideration of the jury, certain letters, telegrams, and correspondence between the defendant and the firm of A. M. Jackson & Co., which plaintiff had introduced in evidence upon cross-examination of said witness Jackson. The several rulings of the district court to which reference has just been had are not sufficiently raised by the petition in error to require consideration at our hands. The only assignment therein relating to the subject is the first, which is in the following language: "The court erred in excluding evidence offered on the trial of said cause by the defendant." This assignment was entirely too indefinite, in that it did not specify the particular part of the evidence that was excluded from the jury. We desire to emphasize the doctrine so often held by this court, namely, that in order to review, a peti-

tion in error must assign alleged errors with such certainty as to enable the court to determine the precise ruling intended. Criticisms are made in the brief of other rulings upon the introduction of testimony, but they will not be considered for the reasons stated above.

On the trial of the cause the defendant below requested the court to charge the jury as follows:

"4. If you find, from the evidence, that the plaintiff was employed by the defendant to make an exchange of the defendant's farm for the Sioux City property, and that plaintiff, in pursuance of such employment, procured the man Clark, who was willing to make the exchange with the defendant, and that the plaintiff brought the defendant and Clark together, yet if he did not negotiate the exchange, but that said negotiation of exchange was made by A. M. Jackson & Co. as defendant's agents, the plaintiff would not be entitled to recover for commission on a complete sale. In such case the plaintiff would be entitled to recover only for the value of the services he rendered after he was actually employed by the defendant."

The foregoing request to charge, the plaintiff in error insists the court refused to give. The record, however, discloses that it was given. Besides the refusal of this instruction is not complained of in a motion for a new trial, hence it cannot be reviewed.

The defendant's fifth request to charge, which was refused, was fully covered by instruction No. 4 given at his request, and by the instructions of the court on its own motion, and the error in such refusal was thereby cured.

The defendant below also asked this instruction, which was refused:

"6. The plaintiff claims that the letters which passed between the plaintiff and the defendant, and which are attached to the defendant's deposition, constitute an agreement between the parties, whereby the plaintiff became the agent of the defendant, authorized and empowered to ne-

gotiate an exchange of the farm, and entitling him to the ordinary commission for selling. But I instruct you in law these letters do not constitute an agreement between the parties which gives the plaintiff the exclusive right to sell or exchange the farm with Clark or any one else, but notwithstanding the letters, the defendant retains the right to sell the property or exchange it by himself or agent. (*Stensgaard v. Smith*, 44 N. W. Rep. [Minn.], 669; *Stillman v. Fitzgerald*, 33 N. W. Rep. [Minn.], 564.)"

This instruction was rightly refused on account of the citation of authorities attached thereto. The authorities cited do not sustain the proposition stated in the instruction refused. The adding of the citations of authorities to instructions is not good practice, and while a cause might not be reversed for the giving of such instruction, where no prejudice is shown, it is discretionary with the trial court to give or refuse an instruction containing a list of authorities relied upon in support thereof.

The giving of the fourth paragraph of the instructions by the court on its own motion is urged in the brief as ground for reversal. This instruction was not excepted to when given, and for that reason alone it will not be considered by us. Moreover, the giving thereof is not assigned for error in either the motion for a new trial or in the petition in error. The seventh assignment in the motion for a new trial is: "The court erred in its instructions to the jury;" and the fourth assignment in the petition in error is as follows: "The court erred in giving the instructions to the jury given upon its own motion, excepted to by the defendant." These are the only assignments which could possibly be claimed to cover the instruction of which complaint is made, and they are too indefinite and general to be considered, unless the entire charge is bad, and this is not claimed. The citation of the decisions of this court sustaining this view is needless.

For the reason last above stated the second instruction

given at the request of the plaintiff below will not be considered by this court.

It is further insisted that the verdict is without evidence to sustain it.    There is practically no conflict in the testimony.    It appears that plaintiff in error, in 1890, was a resident of the state of Ohio, and owned a ranch situate in Wayne county, which contained about 680 acres.    The defendant in error is engaged in the real estate business in said county.    Early in September, 1890, one A. B. Clark, a resident of Sioux City, Iowa, and who owned some real estate therein, while in Wayne county met Mr. Gamble, the plaintiff below, and during the conversation had between them Mr. Clark mentioned the fact that he had been figuring with a Mr. Howser of said county for the exchange of Mr. Clark's Sioux City property for a farm owned by Mr. Howser, but stated he did not think a deal could be made with him, and inquired of Mr. Gamble if he had any property near town to sell or trade.    To this the latter replied in the negative, but subsequently, after a moment's reflection, he informed Mr. Clark that Mr. Shields wanted to dispose of his property, describing its location, and stated that he would write and ascertain the facts, which he immediately did as promised.    Upon receiving a reply to the letter, he wrote to Mr. Clark making inquiry as to what he wanted for his property and the condition upon which he would trade, and on receiving Mr. Clark's reply, Mr. Gamble again addressed a letter to Mr. Shields.    Not long after this Mr. Clark came to Wayne county, called upon the defendant in error and informed him that he had heard from Mr. Shields and wished to examine his land.    Thereupon Mr. Gamble procured a team and went out with Mr. Clark and showed him the ranch. Not very long afterwards the defendant in error, through A. M. Jackson & Co., of Sioux City, effected an exchange of his farm for Mr. Clark's property.    We have stated all that Mr. Gamble did towards bringing about the exchange

or trade.   It is insisted by the plaintiff in error that he
never employed or authorized Mr. Gamble to act for him
in the transaction, but on the other hand that A. M. Jack-
son & Co. were his agents, and he made the deal through
them, paying them for their services.   The letters which
passed between the plaintiff and defendant constitute the
contract of agency between the parties, if such an agency
ever existed.   The following are copies of the entire cor-
respondence :

"WAYNE, NEB., Sept. 11, 1890.

"*Henry Shields*—DEAR SIR: I write you to ask if you
desire to sell your ranch here, and if so would you take
some desirable Sioux City property in trade?   I think I
could make such a trade for you; also could sell your
Short-Horns, as the party's object is to start a Short-Horn
herd near Wayne, and he is a fine cattleman.   This would
be a fine chance to close out your stock if you desire.
Please advise me early.

"Truly yours,        W. O. GAMBLE."

"GIRARD, OHIO, Sept. 16, 1890.

"*W. O. Gamble, Wayne, Nebraska*—DEAR SIR: Your
favor of the 11th inst. addressed to me at Youngstown is
duly received.   Answering your questions concerning the
sale of the ranch, together with the cattle that are upon it,
I would want to know what amount the purchaser is will-
ing to pay in cash, and where in Sioux City the property
that he proposes to exchange is located, and whether it
is improved or unimproved.   Let me have a full descrip-
tion of the Sioux City property, and the value he places
upon it.

"Yours truly,        HENRY B. SHIELDS."

"WAYNE, NEB., Sept. 29, 1890.

"*Henry B. Shields*, DEAR SIR: Mr. Clark, who desires
to trade Sioux City lots, has 150 feet business lots near
stock yards; fine.   Values at $150 per foot; value $15,-
000.   Would take your land and Short-Horns and all your

feed and pay difference in cash. He is in love with the farm and stock, and if his valuations on his lots are not too high, think you can trade; but you must mark your prices up to meet him. I know his lots. They are very desirable, I should think, but cannot say as to their value. A. B. Clark, Sioux City. Write him if you desire to trade, or to me here.

"Truly,                    W. O. GAMBLE."

"GIRARD, OHIO, Oct. 2, 1890.

"*W. O. Gamble, Esq., Wayne, Nebraska*—DEAR SIR: I have your favor of the 29th ult., and note contents. I will have the Sioux City property examined and report to you as soon as possible. Permit me to inquire of you what, in your opinion, my farm is worth. I do not care to write Mr. Clark, preferring to make the deal through you, providing one is made.

"Truly yours,             HENRY B. SHIELDS."

"WAYNE, NEBRASKA, Oct. 6, 1890.

"*H. B. Shields*—DEAR SIR: Yours of the 2d is before me. Your land is worth about $25 per acre. Land that distance well improved is selling for that. I sold 160 four miles out for $22; good improvements. The Hunter farm, three miles out, the finest in the neighborhood, sold for $23.25 recently. I told Mr. Clark you would want $27 to $30 per acre; therefore he will likely ask a stiff price for his Sioux City property. Set your price high enough. People trading always put on a big price, I discover. I do not think you could sell for at $25, but prices are getting very close, and I could sell 80-acre tract joining you on the east, the north half of southwest quarter (S. W. $\frac{1}{4}$) of section thirty-one (31). 27, 4, very good, for $20 per acre; thirty acres broke and balance fine grass land. Mr. Clark is very anxious to locate near Wayne, and is a fine cattle-man. I think you can get a good trade out of him. Parties here are desirous of trading with him, but their land don't lay near enough to the city. He will not buy any-

thing more than three miles out.  I am very busy attend-
ing my cattle.  My men are away for a few days and I
attend 160 head myself.  Pardon this.

"Truly yours,                    W. O. GAMBLE."

It is upon the foregoing letters alone that the jury found
an agency contract existed.  At the first reading of the
correspondence the writer was of the opinion that it failed
to establish any employment or appointment of Mr. Gam-
ble as agent, but upon reflection we are persuaded that the
interpretation placed upon the letters by the jury is not
untenable.  In the letter of September 11 the defendant in
error made the direct offer to Mr. Shields to act for him in
trading his property.  The letter stated, " I think I could
make such a trade for you," and asked for an early reply.
Mr. Shields answers this letter by making inquiry as to
the description, location, and value of the property which
is proposed in exchange for his ranch and as to the terms
upon which an exchange could be effected, to which Mr.
Gamble returned a reply under date of September 29, giv-
ing the desired information, together with the name and
address of the proposed purchaser, and suggesting therein
that Mr. Shields write either to Mr. Clark or to Mr. Gam-
ble if he desired to trade.  In the answer to this letter Mr.
Shields asked the advice of the defendant in error as to the
value of his farm, and closed with the statement, " I do
not care to write Mr. Clark, preferring to make the deal
through you, providing one is made."  There is no claim
that the defendant in error was acting for Mr. Clark in the
transaction.  On the contrary, a fair construction of the en-
tire correspondence above set out shows that the proposition
or offer of the plaintiff below in his first letter to act as Mr.
Shields' agent was accepted by the latter.  It was after such
acceptance that Mr. Clark was shown the ranch by Mr. Gam-
ble and the trade was made.  It is true that the latter did not
negotiate the exchange, but he was instrumental in bringing
the plaintiff below and Mr. Clark together, and an ex-

change of properties was effected.    This was sufficient to entitle plaintiff below to recover the value of the services rendered by him.    The undisputed·evidence shows that a reasonable and fair commission for the completed deal is $450, and the jury allowed the plaintiff but $200.    This finding is justified by the evidence.

Complaint is made of the taxing to the defendant one-half of the costs in the case.    The amount of recovery was within the jurisdiction of a justice of the peace, and the action having been brought in the district court, the plaintiff was not entitled to recover any costs.    Each party is required to pay his own costs.    (*Geere v. Sweet,* 2 Neb., 76 ; *Beach v. Cramer,* 5 Neb., 98 ; *Ray v. Mason,* 6 Neb., 101 ; *Miller v. Roby,* 9 Neb., 471 ; *Goodman v. Pence,* 21 Neb., 459.)

A motion to retax the costs was filed by the plaintiff in error in the trial court, but the amended transcript filed in this court does not show that this motion has ever been passed upon ; hence the judgment as to costs cannot be reviewed. (*Wilkinson v. Carter,* 22 Neb., 186.)    Again, it appears from the record that the defendant in error filed in the lower court a remittitur of all costs taxed to the defendant.    This cured the error in the taxation of costs. The judgment is

AFFIRMED.